[No. E028064. Fourth Dist., Div. Two. Sept. 25, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR GAITAN, Defendant and Appellant.

**COUNSEL**

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHLI, J.**—After defendant waived his right to a jury trial, the trial court found him guilty of possessing a deadly weapon, to wit, metal knuckles (Pen. Code, § 12020, subd. (a)(1)).[1] As a result, defendant was sentenced to the midterm of two years in state prison. On appeal, defendant contends his conviction should be reversed because the trial court erroneously applied a strict liability standard and improperly ignored his lack of criminal intent in finding him guilty of possessing a deadly weapon. In the alternative, defendant contends his conviction should be reversed because there was insufficient evidence to show that his possession of the item was for improper use as a weapon. We find no error and will affirm the judgment.

I

FACTUAL BACKGROUND

On March 30, 2000, about 3:38 p.m., Officer Dave Rowe, an Ontario police officer assigned to the gang unit, made a vehicle stop during which he observed defendant wearing yellow metal knuckles. The metal knuckles were approximately two and a half inches long by half an inch wide and covered the middle finger, ring finger, and little finger of defendant's right hand.

Officer Rowe, who had seen metal knuckles in excess of 25 times during his career, stated that such an object is used to shield and protect a person's

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

hand while inflicting a blow upon another and to cause greater injury upon the person struck. He opined that the metal knuckles defendant was wearing could act as a barrier for defendant's fist.

At trial, defendant admitted wearing the object Office Rowe described as metal knuckles on his right hand as a piece of jewelry on the date in question. He said the object was a three-piece hollow gold ring that he had bought at a swap meet. He also stated that the purpose of the flat band across the top of the object was to put one's name on it or otherwise decorate it. Defendant claimed that his friends did not have any problems with the police when they wore similar objects and that the object was similar to a gold ring in a jewelry catalog shown to him by defense counsel. He further stated that the object broke as he was taking it off and handing it to the police during the vehicle stop.

On rebuttal, Officer Rowe testified that he knew defendant as a member of the Black Angels section of the Ontario Barrio Sur street gang and that, when he stopped defendant, defendant was with three other Black Angel gang members. Based on the officer's background, training, and experience in the gang unit, Officer Rowe stated that gang members often use weapons defensively and offensively to defend their turf.

## II

### DISCUSSION

Defendant contends the trial court improperly applied a general intent standard in finding him guilty of possession of a deadly weapon. Specifically, he maintains, as he did at trial, that the People had to prove he specifically intended to use the metal knuckles for an improper purpose under the statutory definition of "metal knuckles" (§ 12020, subd. (c)(7)). The People respond defendant's claim lacks merit because the prosecution only had to prove defendant's general intent in possessing the metal knuckles, and the trial court properly applied the general intent standard in finding defendant guilty.

At trial, defense counsel argued that the object defendant possessed did not meet the definition of "metal knuckles" under section 12020, subdivision (c)(7) because it could not be used for offensive or defensive purposes. The prosecutor responded that because defendant was wearing the object on his hand, and because it met the definition of "metal knuckles," defendant was guilty under section 12020, subdivision (a).

The trial court and defense counsel discussed section 12020, subdivision (c)(7), *People v. Grubb* (1965) 63 Cal.2d 614 [47 Cal.Rptr. 772, 408 P.2d 100] and *People v. Deane* (1968) 259 Cal.App.2d 82 [66 Cal.Rptr. 177] to determine the proper definition of "metal knuckles." The court concluded that section 12020, subdivision (c)(7) defined "metal knuckles" as an object made wholly or partially of metal, which could be used for purposes of offense or defense, and which protects the wearer's hand or increases the force of a blow. The court, for guidance, then read aloud the comment section of the 1998 revision of CALJIC No. 12.42 and resolved that: (1) the People did not have to prove the intent of the possessor to use the object as a weapon; (2) the defense could attempt to show a nonweapon use; and (3) the People could attempt to rebut this by affirmatively showing other evidence. After making these findings, the court found defendant guilty of violating section 12020, subdivision (a)(1).

At the time of defendant's arrest, section 12020, subdivision (a) stated in relevant part: "Any person in this state who does any of the following is punishable by imprisonment in a county jail not exceeding one year or in state prison: [¶] (1) [P]ossesses . . . any metal knuckles . . . ." Section 12020, subdivision (c)(7) defined "metal knuckles" as "any device or instrument made wholly or partially of metal *which is worn for purposes of offense or defense* in or on the hand and which either protects the wearer's hand while striking a blow or increases the force of impact from the blow or injury to the individual receiving the blow. The metal contained in the device may help support the hand or fist, provide a shield to protect it, or consist of projections or studs which would contact the individual receiving a blow." (Italics added.)

Defendant claims the phrase "which is worn for purposes of offense or defense" requires the People to prove that he specifically intended to use the metal knuckles for an improper purpose. We disagree.

■ When interpreting a statute, "we turn first to the language of the statute, giving the words their ordinary meaning." (*People v. Birkett* (1999) 21 Cal.4th 226, 231 [87 Cal.Rptr.2d 205, 980 P.2d 912].) If the language warrants more than one reasonable interpretation, then the court looks "to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154].) "In the end, '[w]e must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute,

and avoid an interpretation that would lead to absurd consequences.' " (*People v. Rubalcava* (2000) 23 Cal.4th 322, 328 [96 Cal.Rptr.2d 735, 1 P.3d 52] (hereafter *Rubalcava*), quoting *People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].)

■ " 'When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some *further act or achieve some additional consequence*, the crime is deemed to be one of specific intent.' " (*Rubalcava, supra,* 23 Cal.4th at p. 328, quoting *People v. Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370], italics added.) ■ Subdivision (a) of section 12020 describes a single criminal act—carrying metal knuckles—and makes no reference to any other act or consequence. Likewise, the definition of "metal knuckles" in subdivision (c)(7) of that section focuses on the characteristics of the instrument without explicitly referring to the possessor's " 'intent to do a further act or achieve a future consequence . . . .' " (*Rubalcava, supra,* at p. 328, quoting *Hood, supra,* at p. 457.) Accordingly, defendant's intended use is not an element of the crime, and " 'no further mental state beyond willing commission of the act proscribed by law' is necessary." (*Rubalcava, supra,* at p. 328, quoting *People v. Sargent* (1999) 19 Cal.4th 1206, 1215 [81 Cal.Rptr.2d 835, 970 P.2d 409].)

Cases that have analyzed section 12020 provide further confirmation that this section requires general intent. In *Rubalcava,* our Supreme Court, analyzing section 12020, made it clear that " [t]he prosecution need *not* show the intent of the possessor to use an instrument in a violent manner.' " (*Rubalcava, supra,* 23 Cal.4th at p. 329, quoting *People v. Grubb, supra,* 63 Cal.2d 614, 621, fn. 9 (hereafter *Grubb*).) In fact, "*no* court [has] construed section 12020 as a specific intent crime." (*Rubalcava, supra,* at p. 329.) Instead, the surrounding circumstances of possession—including a defendant's intended use—are relevant to the issue of whether the instrument was a prohibited weapon. (*Ibid.*; see also *Grubb, supra,* at pp. 621-622 & fn. 9.)

For example, a defendant "may justify his possession of an instrument found under suspicious circumstances by proof of his intent to use it in accordance with its ordinary legitimate design." (*Grubb, supra,* 63 Cal.2d at p. 621, fn. 9; see also *Rubalcava, supra,* 23 Cal.4th at p. 329.) "Once defendant has put in issue his planned and intended use of the instrument the

People may introduce evidence tending to negate the possibility of a peaceful use by showing, for instance, the utilization of the instrument as a weapon in the past."[2] (*Grubb, supra,* at pp. 621-622, fn. 9.)

Defendant asserts that *Rubalcava* is inapposite here, because the court in that case was interpreting the definition of "dirk" or "dagger" within the meaning of section 12020, subdivision (c)(24). We cannot agree. In that case, similar to here, the defendant claimed that the offense of carrying a concealed dirk or dagger [as compared to metal knuckles] was a specific intent crime, that the *intent to use the concealed instrument as a stabbing weapon* is an element of the crime of carrying a concealed dirk or dagger in violation of section 12020, and that the absence of a specific intent requirement makes the offense a strict liability offense. (*Rubalcava, supra,* 23 Cal.4th at pp. 322, 327-331.) The only difference in this case is the character of the object. Thus, we find *Rubalcava* applicable to the present matter.

Moreover, defendant's reliance on *People v. Oskins* (1999) 69 Cal.App.4th 126 [81 Cal.Rptr.2d 383] is improper since the court in *Rubalcava* disapproved that case. (*Rubalcava, supra,* 23 Cal.4th at pp. 323, 329-331.) In addition, defendant's interpretation of *Grubb, supra,* 63 Cal.2d 614 and *People v. Deane, supra,* 259 Cal.App.2d 82, which relied on *Grubb,* is flawed. In fact, *Grubb,* one of the primary authorities cited by defendant to support the relevance of his subjective intent, expressly rejected such a construction. (*Rubalcava, supra,* 23 Cal.4th at p. 329.)

Defendant cites no case, and we have found none, that has interpreted the definition of "metal knuckles" as defined in section 12020, subdivision (c)(7). The cases we have found involving the offense of carrying metal knuckles have been before the Legislature enacted the definition of "metal knuckles" in 1984.[3] (Stats. 1984, ch. 1562, § 1.1, pp. 5499-5501.) We have also found no legislative history dealing with subdivision (c)(7) of section

---

[2]In this case, the trial court allowed defendant to present evidence of his innocent use and then allowed the People to negate defendant's claim that he wore the item as a piece of jewelry.

[3]However, we note that the cases analyzing section 12020 pre-1984 have held that the People need only show whether the device in question meets the definition of metal knuckles, because metal knuckles are in a class of instruments that have no legitimate use. (*Grubb, supra,* 63 Cal.2d at pp. 621-622, fn. 9; *People v. Favalora* (1974) 42 Cal.App.3d 988, 992 [117 Cal.Rptr. 291]; *People v. Stinson* (1970) 8 Cal.App.3d 497, 501 [87 Cal.Rptr. 537]; *People v. Deane, supra,* 259 Cal.App.2d at pp. 89-90.) The court in *Favalora* explained: "There are certain articles which are impressed by the law as '*indicia* of criminal purpose.' [Citation.] Referred to were slungshots, sandbags, black-jacks and *metal knuckles,* which 'To *every person of ordinary intelligence . . .* are known to be the tools of the brawl fighter and cowardly assassin and of no beneficial use whatever to a good citizen or to society. The

12020. Accordingly, we rely on *Rubalcava* and the cases cited therein to support our conclusion that the intent to use the instrument "for purposes of offense of defense" is not an element of the crime of carrying metal knuckles.

Based on the holding in *Rubalcava*, it is clear that the phrase "for purposes of offense or defense" does not require the People to prove that the defendant was wearing the metal knuckles with the intent to use it for offensive or defensive purposes. As the People point out, the phrase in question simply describes what constitutes a metal knuckle, i.e., a device capable of offensive or defensive use. No specific intent is required here.

Defendant nevertheless contends that without such an intent requirement subdivisions (a) and (c)(7) would create a strict liability crime. This argument was considered and rejected by our Supreme Court in *Rubalcava*. "By declining to make defendant's intended use of the instrument an element of the offense, we do not eliminate the mens rea requirement." (*Rubalcava, supra*, 23 Cal.4th at p. 331.) Because the metal knuckles portion of section 12020 criminalizes " ' "traditionally lawful conduct," ' " we construe the statute to contain a 'knowledge' element." (*Rubalcava, supra*, at pp. 331-332, quoting *People v. Coria* (1999) 21 Cal.4th 868, 880-881 [89 Cal.Rptr.2d 650, 985 P.2d 970].) Therefore, to commit the instant offense, "a defendant must still have the requisite *guilty mind*: that is, the defendant must knowingly and intentionally" carry upon his or her person an instrument "which is worn for purposes of offense or defense . . . ." (*Rubalcava, supra*, at p. 332; § 12020, subd. (c)(7).) A defendant who does not know that he is carrying or wearing the weapon or that the instrument may be used for purposes of offense or defense is thus not guilty of violating section 12020. (*Rubalcava, supra*, p. 332)

In this case, the evidence at trial demonstrated defendant knew that he was wearing the metal knuckles. Further, based on circumstantial evidence, a reasonable trier of fact could conclude that defendant knew the instrument may be used for purposes of offense or defense.

In conclusion, we find the trial court properly applied the general intent standard when it found defendant guilty of violating section 12020. Further, defendant's intended use of the instrument is neither an element of the offense nor a defense.

---

Legislature may take note and act upon such common facts [citation] . . . . It follows that if the beneficial use of a thing is entirely lacking or grossly disproportionate to its harmful use the police power may absolutely prohibit its possession [citation].' " (*Favalora, supra*, at p. 992, second italics added, quoting *People v. Ferguson* (1933) 129 Cal.App. 300, 304 [18 P.2d 741].)

## III

### DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and McKinster, J., concurred.