Filed 6/13/14  P. v. Burkhart CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD BYRON BURKHART,<br><br>    Defendant and Appellant. | B248690<br><br>(Los Angeles County<br>Super. Ct. No. MA056490) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa Mangay Chung, Judge.  Affirmed as modified with directions.

Laurie Wilmore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., Stephanie M. Myoshi and Connie H. Kan, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted defendant, Richard Byron Burkhart, of: two counts of methamphetamine possession for sale (Health & Saf. Code, § 11378); one count of methamphetamine transportation etc. (Health & Saf. Code, § 11379, subd. (a)); and one count of billy possession. (Pen. Code,[1] § 22210 .) Defendant admitted he had served eight prior prison terms (§ 667.5, subd. (b)) and had a prior drug-related felony conviction. (Health & Saf. Code, § 11370.2, subd. (c).) Defendant was sentenced to 18 years and 4 months in the county jail. We modify the judgment and affirm as modified.

# II. THE EVIDENCE

On June 9, 2012, defendant was arrested for possession of 3.27 grams of powder containing methamphetamine, a salable amount. Defendant did not appear to be under the influence of a controlled substance at the time of his arrest. He appeared to be completely sober. Nor was he in possession of any paraphernalia designed for controlled substance use. Three "throwing knives" were within defendant's reach in the passenger compartment of the Suburban defendant was driving. An axe handle was attached by bungee cords to the Suburban's engine.

On September 5, 2012, Deputy Robert Gonzalez arrested defendant pursuant to a warrant. Defendant was on a street known for narcotics use and sales. Defendant was in possession of two baggies containing 0.04 and 1.35 grams of methamphetamine. These were salable amounts. Defendant did not appear to be under the influence of controlled substances. He appeared to be completely sober. He was not in possession of any paraphernalia associated with controlled substance use. Defendant's cellular telephone contained text messages consistent with narcotics sales. Defendant admitted selling illegal drugs, but denied receiving any money in return. Defendant said he acted as a

---

[1] Further statutory references are to the Penal Code except where otherwise noted.

2

middle man and was paid in methamphetamine. Defendant said he sold narcotics to support his addiction. Notably, a controlled substance "sale" includes transfers for noncash benefits. (*People v. Harris* (2000) 83 Cal.App.4th 371, 374; *People v. Peck* (1996) 52 Cal.App.4th 351, 357; *People v. Lazenby* (1992) 6 Cal.App.4th 1842, 1845.)

## III. DISCUSSION

### A. Defendant's Evidence Suppression Motion

#### 1. Evidence and standard of review

Defendant moved to suppress an axe handle found in the engine compartment of the Suburban he was driving at the time of his June 9, 2012 arrest. (§ 1538.5.) The trial court denied the motion. We apply the following standard of review: "'Our review of issues related to the suppression of evidence seized by the police is governed by federal constitutional standards.' (*People v. Lenart* (2004) 32 Cal.4th 1107, 1118; see Cal. Const., art. I, § 28, subd. (f)(2).) 'In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' ([*People v.*] *Lenart, [supra,* 32 Cal.4th] at p. 1119.)" (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1223.)

The evidence adduced at the evidence suppression hearing was as follows. Deputy Larry Pico had arrested defendant for controlled substance violations approximately 10 times over a 6-year period. Deputy Pico was on patrol at midnight on June 9, 2012. Deputy Pico's cruiser passed a Suburban. Deputy Pico shone his spotlight on the passing Suburban. Deputy Pico recognized defendant as the driver. Defendant and Deputy Pico made eye contact. Deputy Pico assumed defendant was on probation. Deputy Pico noted the Suburban's license plate light was dim or out. Deputy Pico made

3

a U-turn and initiated a traffic stop. Deputy Pico saw a plastic bag fly from the Suburban's driver's window. Deputy Pico had seen suspects toss contraband from vehicles more than five times. The maneuver raised Deputy Pico's suspicion. The tossed object was a plastic bag containing a substance resembling methamphetamine. Deputy Pico arrested defendant. Deputy Pico then conducted a search of the Suburban. Deputy District Attorney John Evans asked Deputy Pico, "Did [you do] a search of his Suburban incident to the arrest based on what you had recovered in the investigation?" Deputy Pico responded, "Yes, I did." Deputy Pico recovered an axe handle from the engine compartment. Deputy Pico referred to it as a billy club. The billy club had been strapped to the engine with bungee cords.

## 2. Issues preserved for appeal

Defendant asserts any argument Deputy Pico had probable cause to believe the Suburban contained contraband was forfeited by failure to raise it in the trial court. We find no forfeiture. Defendant relies on Deputy Pico's testimony at the suppression of evidence hearing. Defendant's counsel, Frederick McCurray, asked Deputy Pico, "Now, you said you conducted a search incident to the arrest?" Deputy Pico answered, "Correct, sir." Mr. McCurray subsequently asked, "So as part of your search incident to arrest you went and opened the hood of the vehicle?" Deputy Pico again answered, "Correct, sir." On direct examination, however, Mr. Evans asked Deputy Pico, "Did [you do] a search of his vehicle incident to the arrest *based on what you had recovered in the investigation*?" Deputy Pico responded, "Yes, I did." (Italics added.) What Deputy Pico had recovered was 3.27 grams of powder containing methamphetamine. Defendant had tossed the methamphetamine from the Suburban. The trial court could reasonably infer the scope of Deputy Pico's search was governed by his belief additional contraband would be discovered. In addition, Mr. Evans argued the recovered contraband permitted Deputy Pico to search any area of the Suburban where narcotics might be found.

4

Moreover, the question before the trial court was whether Deputy Pico's actions were objectively reasonable in light of the facts and circumstances confronting him. (*Scott v. United States* (1978) 436 U.S. 128, 135-138; *People v. Carrington* (2009) 47 Cal.4th 145, 168; *People v. Sanders* (2003) 31 Cal.4th 318, 334.) Deputy Pico's state of mind was irrelevant to the inquiry. (*Scott v. United States, supra,* 436 U.S. at pp. 135-138; *People v. Carrington, supra,* 47 Cal.4th at p. 168; *People v. Sanders, supra,* 31 Cal.4th at p. 334.) Therefore, we are not concerned with Deputy Pico's subjective basis for the search. We conclude, therefore, that the Attorney General is not precluded from arguing that probable cause to search the engine compartment existed based on the presence of contraband. (See *People v. Williams* (1999) 20 Cal.4th 119, 128.)

## 3. The search

We agree with the Attorney General that under the present facts, Deputy Pico had probable cause to search the engine compartment. In *Carroll v. United States* (1925) 267 U.S. 132, 156, the United States Supreme Court upheld a warrantless search by prohibition agents. The prohibition agents had probable cause to believe an automobile contained contraband. In *United States v. Ross* (1982) 456 U.S. 798, 800 (*Ross*), the United States Supreme Court addressed the scope of the search permissible under *Carroll.* The high court considered the circumstance in which police officers legitimately stop a vehicle and have probable cause to believe contraband is concealed somewhere therein. The United States Supreme Court held: "[The police officers] may conduct a probing search of the compartments and containers within the vehicle whose contents are not in plain view. . . . [T]hey may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant 'particularly describing the place to be searched.'" (*Ibid.,* fn. omitted; see *Robey v. Superior Court, supra,* 56 Cal.4th at pp. 1230-1231.) This exception to the warrant requirement applies only to vehicle searches supported by probable cause. (*Ross, supra,* 456 U.S. at p. 809 ["[Such] a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a

5

warrant has not actually been obtained."].)  Moreover, the scope of the search "is defined by the object of the search and the places in which there is probable cause to believe" evidence may be found.  (*Id*. at p. 824.)

In *Ross,* the United States Supreme Court concluded its opinion with these words: "We hold that the scope of the warrantless search authorized by [the present] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant.  If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (*Ross, supra,* 456 U.S. at p. 825.)  Several California cases predating *Ross* upheld engine compartment searches.  (*People v. Doherty* (1967) 67 Cal.2d 9, 22; *People v. Superior Court (Gilbert)* (1981) 116 Cal.App.3d 450, 454-455; *People v. Mendez* (1973) 35 Cal.App.3d 606, 609; *People v. Green* (1971) 15 Cal.App.3d 766, 771-774.)  The United States Supreme Court has subsequently affirmed the rule established in *Ross.*  (*Wyoming v. Houghton* (1999) 526 U.S. 295, 301; *California v. Acevedo* (1991) 500 U.S. 565, 570; *California v. Carney* (1985) 471 U.S. 386, 394-395; *U.S. v. Johns* (1985) 469 U.S. 478, 483-488.)

In *People v. Dey* (2000) 84 Cal.App.4th 1318, 1320-1322, the Court of Appeal for the Third Appellate District discussed *Ross* in connection with a truck search.  The Court of Appeal held discovery of a marijuana bud in a passenger compartment provided probable cause to search the trunk.  (*Ibid.*)  Similarly, in *Hall v. State* (Fla.App. 1990) 562 So.2d 714, 714-715, the District Court of Appeal of Florida relied on *Ross* in concluding police officers had probable cause to search a vehicle's engine compartment. In *Hall,* police officers discovered marijuana on the floorboard of a car during a weapons search.  The Florida appellate court concluded:  "Once officers discovered marijuana on the floorboard during their valid weapons search, they had probable cause to believe that the vehicle contained contraband.  This permitted them to search the entire vehicle, including its trunk and engine compartment, under *United States v. Ross,* 456 U.S. 798 . . . ."  (*Hall v. State, supra,* 562 So.2d at p. 714; see also *United States v. Doe* (E.D. Tex. 1992) 801 F.Supp. 1562, 1575 ["If officers have probable cause to believe a car

6

contains contraband, then they have the right to search all of the car, including the locked trunk and engine compartment, and any container within it that could conceal the object of search"]; *State v. Torres* (Conn.App. 1993) 625 A.2d 239, 243 [trial court concluded police officers had probable cause to search Suburban's engine compartment].)

Here, Deputy Pico knew defendant had been arrested repeatedly for controlled substance violations.  Deputy Pico assumed that defendant was on probation.  This made sense as Deputy Pico had repeatedly previously arrested defendant on drug violations. After Deputy Pico initiated a traffic stop, he saw an item being tossed from the driver's window of the Suburban.  The tossed item was a plastic bag containing 3.27 grams of powder containing methamphetamine.  These facts gave Deputy Pico probable cause to believe the Suburban contained contraband and search the engine compartment for such contraband.  The trial court properly denied defendant's motion to suppress the axe handle.  We need not discuss defendant's remaining contentions.

## B.  Jury Instruction

### 1.  Challenged instructions

Defendant was convicted in count 3 of billy possession in violation of section 22210.  Section 22210 states, "[A]ny person in this state who . . . possesses . . . any instrument or weapon of the kind commonly known as a billy . . . is punishable  . . . ." The jury was instructed that possession of a billy, as charged in count 3, required a general criminal intent:  "For you to find a person guilty of [that crime], that person must not only commit the prohibited act, but must do so with wrongful intent.  A person acts with wrongful intent when he intentionally does a prohibited act; however, it is not required that he intend to break the law."  (CALCRIM No. 252.)  The jury was instructed on illegal possession of a weapon in pertinent part as follows:  "The defendant is charged in Count 3 with unlawfully possessing a weapon, specifically a billy.  To prove that the defendant is guilty of this crime, the People must prove that:  [¶]  1. The defendant

7

possessed a billy; [¶] 2. The defendant knew that he possessed the billy. [¶] AND [¶] 3. The defendant possessed the object as a weapon. When deciding whether the defendant possessed the object *as a weapon,* consider all the surrounding circumstances relating to that question, including when and where the object was possessed, where the defendant was going, whether the object was changed from its standard form, and any other evidence that indicates whether the object would be used for a dangerous, rather than a harmless, purpose. [¶] The People do not have to prove that the defendant intended to use the object as a weapon. . . .” (CALCRIM No. 2500, orig. italics.)

Defendant challenges the legal correctness of the jury instructions. Our review is de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218; *People v. Berryman* (1993) 6 Cal.4th 1048, 1089, disapproved on another point in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.) We find no error. And because we find no error, there was no violation of defendant's due process or jury trial rights under the California or United States Constitutions. (See *People v. Foster* (2010) 50 Cal.4th 1301, 1346-1348; *People v. Prince* (2007) 40 Cal.4th 1179, 1282, fn. 25.)

## 2. Intent

Defendant contends it was error to instruct the jury in two respects concerning the requisite mental state necessary to violate section 22210. First, defendant argues the jury should not have been instructed it did not have to find defendant intended to *use* the billy as a weapon. Second, defendant argues the jury should have been instructed he had to have a specific intent to possess the club as a weapon. Defendant relies in part on CALCRIM No. 2500, which states: “Give only [when the object is designed solely for use as a weapon]. [¶] [The People do not have to prove that the defendant intended to use the object as a weapon.]” (CALCRIM No. 2500 (2014 ed.) p. 344.) But the Bench Notes to CALCRIM No. 2500 state: “Need Not Prove Intent to Use. *People v. Rubalcava* (2000) 23 Cal.4th 322, 328 . . . ; *People v. Grubb* (1965) 63 Cal.2d 614, 620-621, fn. 9 . . . .” (Bench Notes to CALCRIM No. 2500, *supra,* p. 346.) The Bench Notes

8

also provide, "Innocent Object—Must Prove Possessed as Weapon. *People v.* Grubb[, *supra,*] 63 Cal.2d [at pp.] 620-621 . . . ; *People v. Fannin* (2001) 91 Cal.App.4th 1399, 1404 . . . ." (Bench Notes to CALCRIM No. 2500, *supra,* p. 347.) And the Commentary to CALCRIM No. 2500 explains: "'Intent to use a weapon is not an element of the crime of weapon possession.' (*People v. Fannin*[, *supra,*] 91 Cal.App.4th [at p.] 1404 . . . .) However, interpreting now-repealed Penal Code section 12020[, subdivision] (a)(4), possession of a concealed dirk or dagger, [our] Supreme Court stated that '[a] defendant who does not know that he is carrying the weapon or that the concealed instrument may be used as a stabbing weapon is . . . not guilty of violation section 12020.' (*People v. Rubalcava*[, *supra,*] 23 Cal.4th [at pp.] 331-332 . . . Applying this holding to possession of other weapons prohibited under now-repealed . . . section 12020[, subdivision] (a), the courts have concluded that the defendant must know that the object is a weapon or may be used as a weapon, or must possess the object 'as a weapon.' (*People v. Gaitan* (2001) 92 Cal.App.4th 540, 547 . . . ; *People v. Taylor* (2001) 93 Cal.App.4th 933, 941 . . . ; *People v. Fannin, supra,* 91 Cal.App.4th at p. 1404 . . . .)" (Com. to CALCRIM No. 2500, *supra,* pp. 347-348.) CALCRIM No. 2500 and its notes as a whole are consistent with our discussion in the following paragraph. Moreover, the CALCRIM instruction and its notes are not themselves the law. (See *People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7 [jury instructions are not themselves the law]; Judicial Council of California Criminal Jury Instructions, *supra*, Preface, p. xii [CALCRIM instructions based on the law].)

Illegal weapon possession under section 22210 is a general intent crime. (*People v. Gaitan, supra,* 92 Cal.App.4th at pp. 545-547 [former § 12020, metal knuckles possession] ; cf. *People v. Rubalcava, supra,* 23 Cal.4th at p. 328 [former § 12020, carrying a concealed dirk or dagger].) As the Court of Appeal for the Fourth Appellate District explained in *People v. Gaitan, supra,* 92 Cal.App.4th at page 545: """When[, as here,] the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general

9

criminal intent."'"'"  It is well established that defendant's intent to *use* the billy as a weapon is not an element of the crime.  (*People v. King* (2006) 38 Cal.4th 617, 624-625; *People v. Grubb, supra,* 63 Cal.2d at pp. 620-621, fn. 9; *People v. Gaitan, supra,* 92 Cal.App.4th at pp. 544-547; *People v. Fannin, supra,* 91 Cal.App.4th at p. 1404; *People v. Odegard* (1962) 203 Cal.App.2d 427, 431, disapproved on other points in *People v. Superior Court* (1972) 7 Cal.3d 186, 195, fn. 8, and *Mozzetti v. Superior Court* (1971) 4 Cal.3d 699, 703-705; *People v. McKinney* (1935) 9 Cal.App.2d 523, 525; *People v. Ferguson* (1933) 129 Cal.App. 300, 303; cf. *People v. Rubalcava, supra,* 23 Cal.4th at p. 328; 17 Cal.Jur.3d Criminal Law: Crimes Against Administration of Justice, § 204.)  Rather, when the object is not a weapon per se, the prosecution must prove possession *as a weapon.*  (*People v. Grubb, supra,* 63 Cal.2d at pp. 620-621 [billy possession]; *People v. Fannin, supra,* 91 Cal.App.4th at p. 1404 [slingshot possession].)

As our Supreme Court explained in *People v. Grubb, supra,* 63 Cal.2d at pages 620-621, "[T]he Legislature sought . . . to outlaw possession of the sometimes-useful object when the attendant circumstances, including the time, place, destination of the possessor, the alteration of the object from standard form, and other relevant facts indicated that the possessor would use the object for a dangerous, not harmless, purpose.  (Cf. *People v. Freeman* (1927) 86 Cal.App. 374, 376.)"  (Fn. omitted.)  The Court of Appeal for the First Appellate District similarly made clear in *Fannin*:  "The only way to [prove possession *as a weapon*] is by evidence 'indicat[ing] that the possessor *would use* the object for a dangerous, not harmless, purpose.'  ([*People v.*] *Grubb, supra,* 63 Cal.2d at pp. 620-621, italics added.)  The evidence may be circumstantial, and may be rebutted by the defendant with evidence of 'innocent usage.'  (*Id.* at p. 621.)  The prosecution may not, however, merely show that the defendant had a table leg in his car while driving through a dangerous neighborhood, and require him to prove that he did not carry it as a weapon.  Such a rule would turn the presumption of innocence on its head.  Intended use is not an element of weapon possession, but the prosecution always bears the burden of proving that the defendant possessed a weapon."  (*People v. Fannin, supra,* 91 Cal.App.4th at p. 1404; accord, *People v. Davis* (2013) 214 Cal.App.4th 1322, 1327.)

10

The trial court did not err in instructing the jury it did not have to find defendant intended to *use* the billy as a weapon. Nor was it error to fail to instruct the jury defendant had to have a specific intent to possess the object as a weapon.

### 3. Failure to define "billy"

Defendant further contends it was error to not define "billy" for the jury. We reject that assertion for the reasons stated in *People v. Davis, supra,* 214 Cal.App.4th at page 1330: "[W]e find no error in instructing the jury pursuant to CALCRIM No. 2500 without adding a definition of a billy . . . Expert testimony may be admitted on the question of whether an object falls within the definition of a prohibited object. (*People v. Deane* (1968) 259 Cal.App.2d 82, 89 [superseded by statute on another point as stated in *In re David V.* (2010) 48 Cal.4th 23, 26-27].)" In *Davis,* the opinion testimony came from police officers. (*People v. Davis, supra,* 214 Cal.App.4th at p. 1330.) Here, Detective Thomas Kim described the axe handle as a "club." Detective Kim noted the axe handle was an object that could be purchased at a hardware store. It was not something that was advertised as a baton. Detective Kim carried a baton on patrol. It was designed as a weapon. Its intended use was to subdue a suspect or arrestee. Officer Pico testified he found "a large billy club or axe handle" in the Suburban's engine compartment. Officer Pico further testified an axe handle could be designed to be used as a weapon. Officer Pico described an expandable baton he carried on patrol that was designed for use if necessary to subdue suspects or arrestees. Officer Pico testified: "Most drug dealers will keep weapons around. Most of the time it is firearms. In this case, it was two different types of weapons. [Defendant] had throw knives easily accessible to him in case he was going to get ripped off. He can defend himself or he just use[s] it to collect money or drugs or whatever the case is. Same thing with the billy club, it is used like an enforcer-type weapon --." The foregoing was sufficient to support a jury finding the axe handle was a "billy." No jury instruction defining a billy was required. (See *People v. Davis, supra,* 214 Cal.App.4th at p. 1330.)

11

## 4. Harmless error

Even if the trial court had erred in instructing the jury, any error was harmless under any standard of reversible error. (*Chapman v. California* (1968) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836.) The evidence defendant possessed a billy as a weapon and intended to use it as such was compelling. The jury viewed the axe handle. Defendant was an admitted drug dealer who was arrested in an area known for narcotics activity. Defendant was in possession of 3.27 grams of powder containing methamphetamine. He had three throwing knives within reach in the passenger compartment of the Suburban. The axe handle was hidden in the engine compartment where it would not be discovered in the event of a routine traffic stop. The axe handle was the type of weapon a drug dealer would use for defensive and enforcement purposes. It was similar to the type of weapon law enforcement officers carry on patrol. There was no evidence the axe handle, found strapped to the engine, was to be used for chopping wood or other innocent activity. Defendant admitted he knew the axe handle was in the engine compartment. Defendant explained that the axe handle was used to prop the hood open. That explanation was implausible. Deputy Pico stated the hood was in working order. It stayed up on its own for 15 to 20 minutes. And using the axe handle to prop the hood open would be awkward. A person would have to lift the hood and hold it open while untying the axe handle from the engine to free it for use as a propping mechanism. We have reviewed exhibit No. 3 which depicts the axe handle tied down to the engine. Given the foregoing evidence, any instructional error was harmless.

## C. Sufficiency Of The Evidence

Defendant challenges the sufficiency of the evidence the axe handle was a billy and that he intended to use the billy as a weapon. Our Supreme Court set forth the applicable standard of review in *People v. Barnes* (1986) 42 Cal.3d 284, 303: "The proper test to determine a claim of insufficient evidence in a criminal case is whether, on

12

the entire record, a rational trier of fact could find [defendant] guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576-578; *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.) In making this determination, the appellate court "'"must view the evidence in a light most favorable to [the verdict] and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citations.]'" (Accord, *People v. Griffin* (2004) 33 Cal.4th 1015, 1028.)

The present jury viewed the axe handle and heard testimony as to its uses. We have reviewed the photograph of the axe handle tied to the engine. Defendant was an admitted drug dealer. Defendant was in a high narcotic activity area on June 9, 2012, when he was arrested. His nickname was "Travieso," meaning "a pain in the ass," or "trouble." Drug dealers keep weapons on hand for defensive and enforcement purposes. The axe handle was an object that could be used by a drug dealer for those purposes. A billy was commonly used for enforcement. Detective Kim testified he carried a similar weapon—a baton—on patrol. The baton was department issued and designed as a weapon. Officer Pico described a similar object—an expandable baton—that he carried on patrol. Officer Pico's baton was designed for use to subdue suspects or arrestees. The "large billy club or axe handle" was strapped to the engine of the Suburban defendant was driving as he tossed methamphetamine out the window. Putting the axe handle in the engine compartment served to avoid its discovery during a routine traffic stop. Moreover, on June 9, 2012, when defendant was stopped for a traffic violation, he had other weapons at his disposal. Defendant claimed the axe handle was strapped to the engine for use to prop the hood open. Officer Pico testified the Suburban's hood stayed up on its own; it had remained open for 10 to 15 minutes without needing to be propped up. This was substantial evidence the axe handle was a billy which defendant intended to use as a weapon. (See *People v. Davis, supra,* 214 Cal.App.4th at pp. 1327-1329; see also *People v. King, supra,* 38 Cal.4th at p. 624; *People v. Grubb, supra,* 63 Cal.2d at p. 621.)

13

D.  Sentencing


The trial court imposed a single $50 criminal laboratory analysis fee (Health & Saf. Code, § 11372.5, subdivision (a)) plus assessments and a surcharge.  The trial court should have imposed a $50 criminal laboratory analysis fee plus assessments and a surcharge on two unstayed counts, counts 1 and 4.  (*People v. Sharret* (2011) 191 Cal.App.4th 859, 863; *People v. Turner* (2002) 96 Cal.App.4th 1409, 1413-1416.)  As to count 2, the trial court should have imposed and then stayed the fee and assessments under section 654, subdivision (a).  (*People v. Sharret, supra,* 191 Cal.App.4th at pp. 869-870.)  The judgment must be modified to so provide.  (*People v. Sharret, supra,* 191 Cal.App.4th at p. 870; *People v. Turner, supra,* 96 Cal.App.4th at p. 1417.)  In addition, imposition of the criminal laboratory analysis fee was not reflected in the abstract of judgment.  The abstract of judgment must be amended to reflect the fees, assessments and surcharges.  (*People v. Jones* (2012) 54 Cal.4th 1, 89; *People v. Martinez* (1998) 65 Cal.App.4th 1511, 1523-1524.)

Defendant was arrested on June 9, 2012.  He remained in custody for 38 days until he was released on bail, on July 16, 2012.  Defendant was rearrested on September 5, 2012.  He was sentenced 213 days later, on April 5, 2013.  Defendant received credit for 252 days in custody plus 252 days of conduct credit.  However, he was confined for a total of only 251 days.  The judgment must be modified and the abstract of judgment amended to reflect 251 days of custody credit and 250 days of conduct credit for a total of 501 days.  (*People v. Miles* (2013) 220 Cal.App.4th 432, 437; *People v. Donan* (2004) 117 Cal.App.4th 784, 792-793.)

## IV.  DISPOSITION

The judgment is modified to impose a $50 criminal laboratory analysis fee (Health & Saf. Code, § 11372.5, subd. (a)) plus penalties and surcharges on counts 1, 2 and 4. The fee, penalties and surcharge are to be stayed as to count 2.  (Pen. Code, § 654, subd. (a).)  The judgment is further modified to award defendant 251 days of presentence custody credit and 250 days of conduct credit for a total credit of 501 days.  The judgment is affirmed in all other respects.  Upon remittitur issuance, the clerk of the superior court must amend the abstract of judgment to reflect the foregoing and deliver a copy to the Los Angeles County Sheriff.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P. J.



We concur:



MOSK, J.



KRIEGLER, J.


15