[No. A090617. First Dist., Div. Three. Aug. 30, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNNY RALPH FANNIN, Defendant and Appellant.

**COUNSEL**

Brian R. Dinday for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Rene A. Chacon and Juliet B. Haley, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PARRILLI, J.**—Here we consider whether a bicycle lock on a chain may be a "slungshot" within the scope of the Dangerous Weapons Control Law. (Pen. Code, § 12000 et seq.) We conclude that it may be, if the evidence proves the defendant carried it as a weapon.

The San Mateo County District Attorney charged Johnny Ralph Fannin with possessing a slungshot, in violation of Penal Code section 12020,

subdivision (a). Fannin stipulated to a court trial based on the preliminary hearing transcript. The court found him guilty, and sentenced him to 16 months in prison. Fannin appeals, contending the term "slungshot" is unconstitutionally vague and overbroad, both on its face and as applied to him. He also contends the judgment is not supported by substantial evidence.

Greg Oglesby, a Daly City police officer, testified that he approached Fannin at a bus stop around 5:30 in the morning. Oglesby had seen Fannin at the same stop a couple of hours earlier. Fannin said he was waiting for a bus. Oglesby explained that bus service did not begin until 6:00 a.m. Oglesby asked Fannin if he had anything illegal in his possession. Fannin said no, and consented to a search. In Fannin's jacket pocket, Oglesby found a two-foot length of metal chain, with a heavy padlock attached to one end. Oglesby recognized this item as a slungshot, which Oglesby characterized as "a device, heavy object, usually a padlock that is attached to some type of device that allows [it] to be whipped, commonly a handkerchief, or in this case a chain."

Fannin told Oglesby the lock and chain were for his bicycle, which was at home. He did not have the key, which was also at home. At this point, Oglesby read Fannin his *Miranda* rights. (*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].) He then asked Fannin why he was carrying the lock and chain. Fannin said he had it for self-defense; someone had tried to "punk" him the day before, and due to a previous head injury he was particularly vulnerable to blows to the head.

Penal Code section 12020, subdivision (a)(1) prohibits the possession of "any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sap, or sandbag." ▮ Fannin contends "slungshot" is an archaic term that is no longer commonly known, and therefore the statute fails to meet the due process requirement of providing reasonable notice of what it prohibits. We disagree. ▮ Criminal statutes must be sufficiently definite to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and to give the police guidelines definite enough to prevent arbitrary and discriminatory enforcement. However, "[i]n analyzing whether a statute is sufficiently definite to pass constitutional muster, we look not only at the language of the statute but also to legislative history and California decisions construing the statute." (*People v. Bamba* (1997) 58 Cal.App.4th 1113, 1120 [68 Cal.Rptr.2d 450]; *People v. Heitzman* (1994) 9 Cal.4th 189, 199 [37 Cal.Rptr.2d 236, 886 P.2d 1229].)

▮ California case law provides a clear definition of "slungshot." In *People v. Williams* (1929) 100 Cal.App. 149 [279 P. 1040] (*Williams*), the

court adopted the following dictionary definition: "a small mass of metal or stone fixed on a flexible handle, strap or the like, used as a weapon."[1] The slungshot possessed by Williams was "a flat steel wrench about six inches in length and weighing approximately five ounces," with "a looped leather strap about twelve inches long so contrived by means of wire and leather thongs as to allow the wrench to be placed in a pocket at one end, while the end forming the loop could be slipped over the wrist of the user and held in the hand." (*Id.* at p. 151.)

In *People v. Mulherin* (1934) 140 Cal.App. 212 [35 P.2d 174] (*Mulherin*), the weapon in question was made of 56 one-inch metal washers, strung on rawhide thongs knotted to hold the washers together and form a seven-and-a-half-inch handle that could be looped around the wrist. Mulherin was convicted of possessing a blackjack, but the court noted that the weapon more closely fit the *Williams* definition of a slungshot. Nevertheless, the court held the weapon qualified as *a kind* of blackjack. (*Mulherin, supra,* at pp. 213-214.) The court observed that blackjacks, slungshots, billys, sand-clubs, and sandbags could all be properly described by the term "sap." "The use of language as applied to these weapons, all of the same class, is rather indefinite. It is significant that the legislature did not prohibit possession of a black-jack as such, a slung-shot, as such, a billy, as such . . . as it might have done, but instead, and very likely with appreciation of the difficulties of nomenclature, forbade ownership of any instrument or weapon 'of the kind', as commonly known. The purpose undoubtedly was to outlaw instruments which are ordinarily used 'for criminal and improper purposes' [citations], and so we have in this act 'a partial inventory of the arsenal of the "public enemy", the "gangster" ' [citation], and a prohibition against owning anything 'of the kind'." (*Id.* at p. 215.)

The definition of "slungshot" applied in *Williams* and *Mulherin* is sufficiently specific to pass constitutional muster. However, Fannin contends this case is different from *Williams* and *Mulherin* because his chain and padlock was not specially designed or modified for use as a weapon. He claims it would be unconstitutional to read the statute so broadly as to encompass such an ordinary useful object; otherwise, any student carrying a bicycle chain and lock would be subject to arrest and prosecution at the whim of the police. A similar claim was rejected in *People v. Grubb* (1965) 63 Cal.2d 614 [47 Cal.Rptr. 772, 408 P.2d 100] (*Grubb*). Grubb was charged with possession of a "billy" after the police found a baseball bat in his car, with a few

---

[1]Webster's Seventh New Collegiate Dictionary (1972) provides a nearly identical definition: "a striking weapon consisting of a small mass of metal or stone fixed on a flexible handle or strap." Merriam-Webster maintains the same version online, at <http://www.mw.com.cgi-bin/dictionary> (as of Aug. 30, 2001).

inches of the handle broken off. He argued that Penal Code section 12020 is unconstitutionally vague because no one can know whether an ordinary object might fall within the scope of the statute merely because it might be used as a weapon. (*Grubb, supra,* 63 Cal.2d at pp. 616, 619-620.)

Reasoning that the constitutionality of a statute designed to protect the public from dangerous weapons must be sustained if possible, our Supreme Court found the general terms of the statutory ban against weapons to be reasonably certain in light of their legislative purpose: "The Legislature here sought to outlaw the classic instruments of violence and their homemade equivalents; the Legislature sought likewise to outlaw possession of the sometimes-useful object when the attendant circumstances, including the time, place, destination of the possessor, the alteration of the object from standard form, and other relevant facts indicated that the possessor would use the object for a dangerous, not harmless, purpose. [Citation.]

"Thus we hold that the statute embraces instruments other than those specially created or manufactured for criminal purposes; it specifically includes those objects 'of the *kind* commonly known as a billy.' (Pen. Code, § 12020; italics added.) The concomitant circumstances may well proclaim the danger of even the innocent-appearing utensil. The Legislature thus decrees as criminal the possession of ordinarily harmless objects when the circumstances of possession demonstrate an immediate atmosphere of danger. Accordingly the statute would encompass the possession of a table leg, in one sense an obviously useful item, when it is detached from the table and carried at night in a 'tough' neighborhood to the scene of a riot. On the other hand the section would not penalize the Little Leaguer at bat in a baseball game.

"Applying this test to the instant case, we find the possession of the altered baseball bat, taped at the smaller end, heavier at the unbroken end, carried about in the car, obviously usable as a 'billy,' clearly not transported for the purpose of playing baseball, violates the statute.

"We recognize that the presence of suspicious circumstances attendant to possession of the proscribed object does not forge an ironclad case against defendant. He may be able to demonstrate an innocent usage of the object but the burden falls upon him to do so." (*Grubb, supra,* 63 Cal.2d at pp. 620-621, fn. omitted.) The *Grubb* court continued its discussion in a footnote at this point, as follows: "The prosecution need not show the intent of the possessor to use an instrument in a violent manner. [Citation.] A defendant, on the other hand, may justify his possession of an instrument found under suspicious circumstances by proof of his intent to use it in accordance with

its ordinary legitimate design." (*Grubb, supra,* 63 Cal.2d at pp. 621-622, and fn. 9.)

*Grubb* has been read to mean that "where the object may have a legitimate and lawful use, . . . there [must] be evidence tending to show that, at the time and place of the alleged illegal possession, the possessor contemplated the unlawful and not the lawful use." (*People v. Deane* (1968) 259 Cal.App.2d 82, 89 [66 Cal.Rptr. 177]; 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Public Peace and Welfare, § 161, pp. 682-684; see CALJIC No. 12.42 (1998 rev.) [defining "deadly weapon," and incorporating *Grubb*'s listing of "attendant circumstances" indicating intended use of an innocent object "as a weapon should the circumstances require"].) There is some tension, however, between this reading and the *Grubb* court's statement in a footnote that "[t]he prosecution need not show the intent of the possessor to use an instrument in a violent manner." (*Grubb, supra,* 63 Cal.2d at pp. 621-622, fn. 9, citing *People v. McKinney* (1935) 9 Cal.App.2d 523, 525 [50 P.2d 827], a case involving possession of a "sap" that was not described in the opinion.)

We believe the tension must be resolved as follows. Intent to use a weapon is not an element of the crime of weapon possession. "Proof of possession alone is sufficient." (*People v. McKinney, supra,* 9 Cal.App.2d at p. 525.) However, if the object is not a weapon per se, but an instrument with ordinary innocent uses, the prosecution must prove that the object was possessed *as a weapon.* The only way to meet that burden is by evidence "indicat[ing] that the possessor *would use* the object for a dangerous, not harmless, purpose." (*Grubb, supra,* 63 Cal.2d at pp. 620-621, italics added.) The evidence may be circumstantial, and may be rebutted by the defendant with evidence of "innocent usage." (*Id.* at p. 621.) The prosecution may not, however, merely show that the defendant had a table leg in his car while driving through a dangerous neighborhood, and require him to prove that he did not carry it as a weapon. Such a rule would turn the presumption of innocence on its head. Intended use is not an element of weapon possession, but the prosecution always bears the burden of proving that the defendant possessed a weapon. This interpretation of *Grubb* puts to rest the constitutional challenges raised by Fannin.

Our analysis is consistent with our Supreme Court's recent decision in *People v. Rubalcava* (2000) 23 Cal.4th 322 [96 Cal.Rptr.2d 735, 1 P.3d 52] (*Rubalcava*), a prosecution for possession of a concealed "dirk or dagger" under Penal Code section 12020. The applicable statutory definition of these terms referred merely to *capability* of use as a weapon: "a knife or other instrument with or without a handguard that is capable of ready use as a

stabbing weapon that may inflict great bodily injury or death." (Pen. Code, § 12020, subd. (c)(24); *Rubalcava, supra,* 23 Cal.4th at pp. 327-328.) The court noted that this definition is unambiguous, and requires no intent to use a concealed instrument as a stabbing weapon. (*Rubalcava,* at p. 328.) Furthermore, legislative history reflected an express purpose *not* to make intended unlawful use an element of the offense, even though the Legislature recognized that innocent possession of many legal instruments would be criminalized. (*Id.* at pp. 328-331.) The court rejected Rubalcava's constitutional challenges, finding the statutory definition of "dirk or dagger" neither vague nor unconstitutionally overbroad. (*Id.* at pp. 332-333.)

The *Rubalcava* court expressed concern over the wisdom of criminalizing a "wide range of otherwise innocent conduct," such as taking a recently purchased steak knife home from the store or carrying a kitchen knife to a potluck dinner. (*Rubalcava, supra,* 23 Cal.4th at pp. 331, 333.) Nevertheless, leaving the wisdom of the statute for the Legislature to reconsider, the court concluded that proof of intent to use an object as a stabbing instrument is not required for a conviction, nor should the jury be instructed on intended use of a "dirk or dagger" under CALJIC No. 12.42. (*Rubalcava,* at pp. 333-334.)

Like the *Rubalcava* court, we accept the Legislature's determination to criminalize possession of a broad range of "instruments and weapons." However, the Legislature has treated dirks and daggers differently from slungshots. Penal Code section 12020 does not proscribe possession of any object "capable of ready use" as a slungshot. Nor does any legislative history reflect a desire to broadly prohibit the possession of heavy objects affixed to flexible handles regardless of the possessor's purpose. The statute proscribes possessing "any instrument or weapon of the kind commonly known as a . . . slungshot" (Pen. Code, § 12020, subd. (a)(1)), and the judicially adopted definition specifies that a slungshot is a device "used as a weapon" (*Williams, supra,* 100 Cal.App. at p. 151). Therefore, when the prosecution contends an ordinary object like a bicycle lock is a kind of slungshot, it must prove the defendant possessed the object as a slungshot. On the other hand, when the defendant is charged with possessing a slungshot like the rawhide and metal device described in *Mulherin,* which had no conceivable innocent function, proof of mere possession is sufficient. (*Mulherin, supra,* 140 Cal.App. at pp. 213-214; *People v. McKinney, supra,* 9 Cal.App.2d at pp. 524-525.)

Fannin told Officer Oglesby that he carried the chain and padlock for self-defense. That statement identified the bicycle lock as a weapon, and brought it within the class of objects prohibited by Penal Code section 12020. Like Grubb, who told the police he carried the bat for self-defense and had hit people with it in the past, Fannin with his own words placed the

instrument in his possession "precisely into the statutory design." (*Grubb*, *supra*, 63 Cal.2d at p. 618.) Unlike Grubb, however, Fannin concedes the admissibility of the statements he made to the police. (See *id.* at pp. 616-617, and fn. 1.) Fannin's admission was evidence sufficient to support his conviction.

Fannin's admission distinguishes this case from *People v. Golden* (1946) 76 Cal.App.2d 769 [174 P.2d 32], another prosecution for possession of a weapon consisting of an object with a legitimate use. Golden was charged with possessing a dangerous weapon after the police found in his car a torpedo-shaped weight about 10 inches long, attached to several short lengths of rope. At trial before the court, Golden testified he had found this object and put it in his car without knowing what it was. An expert witness identified it as a standard "monkey fist," a device attached by sailors to the end of a line to facilitate throwing the line to a dock. (*Id.* at pp. 770-771.) The Court of Appeal summarily reversed Golden's conviction, noting the Legislature has not made it illegal to possess a "monkey fist," "nor is a 'monkey fist' commonly known as a black-jack, slungshot, billy, sand-club, sandbag or metal knuckle. Hence it is clear that there is a total absence of any evidence to sustain defendant's conviction . . . ." (*Id.* at p. 771.) Golden, unlike Fannin, did not admit that he was carrying the otherwise innocent object for use as a "slungshot" if he had to defend himself.

To sum up, a slungshot is a striking weapon consisting of a heavy weight attached to a flexible handle. An ordinary object such as a bicycle lock configured like Fannin's, with the lock attached to one end of a chain, may be a slungshot. The prosecution bears the burden of proving the defendant possessed such an object as a weapon. The prosecution may meet that burden with circumstantial evidence, or with the defendant's statements explaining why he carried the object. On the other hand, the defendant may present evidence that he possessed the object innocently, for the purposes served by its legitimate design instead of those proscribed by Penal Code section 12020.

## DISPOSITION

The judgment is affirmed.

McGuiness, P. J., and Corrigan, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 12, 2001. Kennard, J., and Chin, J., were of the opinion that the petition should be granted.