Filed 2/9/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>COREY V. BAUGH,<br><br>        Defendant and Appellant. | A145675<br><br>(Contra Costa County<br>Super. Ct. No. 51424738) |

Defendant Corey V. Baugh appeals a judgment entered on a jury verdict finding him guilty of possessing a billy club (Pen. Code,[1] § 22210). Baugh contends the trial court erroneously instructed the jury that a charge of possessing a billy does not require the prosecution to prove he intended to use it as a weapon. We disagree and therefore affirm the judgment.

## I.    BACKGROUND

Late one evening in Brentwood, Baugh was pulled over while driving a yellow Chevy Cavalier registered to the mother of Joey Tipton-Garcia, Baugh's friend and neighbor. Although the car was owned by someone else, Baugh regularly drove it.

Officer Jonathan Colburn made the traffic stop when he saw the car had an inoperable headlight. Sergeant David Schroer, providing backup, alerted Officer Colburn to a .22 caliber round he spotted in the coin tray. In addition, Officer Colburn noticed the car's ignition switch was torn out. Suspecting a vehicle theft, he ordered Baugh out of the car and began a search.

---

[1] All further statutory citations are to the Penal Code unless noted otherwise.

1

As Baugh got out of the vehicle, Officer Colburn saw a small wooden bat wedged between the driver-side door and seat. He also found two bags of .22 caliber ammunition under the driver's seat and a loaded .22 caliber rifle disguised as a baseball bat protruding from the trunk. At that point, he took Baugh into custody. While being transported to jail in handcuffs, Baugh complained of rib pain due to being "jumped" three weeks earlier.

Following Baugh's arrest, he was charged with three felony offenses: being a felon in possession of a firearm (§ 29800, subd. (a)(1)) (Count One), being a person prohibited from possessing a firearm in possession of ammunition (§ 30305, subd. (a)) (Count Two), and possessing a billy (§ 22210) (Count Three). A prior strike for assault with a deadly weapon upon a police officer in violation of section 245, subdivision (c), was also alleged.

At trial, relying on testimony from Officer Colburn, the People argued the small wooden bat was a billy. In his defense, Baugh claimed it was not a billy but a tool called a "tire thumper."

Baugh told the jury he owned the bat because it was an essential tool for his work as a commercial truck driver. He explained that commercial truck drivers always check the air pressure of their truck tires as part of a routine "pre-trip" safety inspection, which entails thumping the tires with a small wooden bat and listening for a particular sound. Baugh said he could be fined or fired if he drove a truck without a tire thumper.

When asked why he had the small wooden bat with him even though he was not in a commercial truck, Baugh answered, "if you do not take your stuff out of the truck, somehow, your tools might come up missing by the other driver" of the shared vehicles. He claimed he placed it next to the driver's seat specifically to ensure he would remember to bring it down from the car.

Tipton-Garcia, the car's primary driver and Baugh's friend and neighbor, testified she was familiar with the tools of commercial truck drivers because her father worked as one. She previously saw the small wooden bat "[a]round the house" and believed it was a tire thumper.

2

The People countered that Baugh's version of events was implausible, and offered an alternative view of his intent based on the circumstances. At the time of the traffic stop, the People pointed out, Baugh was neither driving a commercial truck nor steadily employed with a trucking company, so it made no sense that he would need a tire thumper close at hand.

Because this incident occurred outside any time frame that would put Baugh behind the wheel of a commercial truck, the People suggested the wooden bat was a weapon intended for self-defense, which is why he had it within easy reach from the driver's seat. Highlighting Baugh's statement that he had been recently jumped, the People argued he likely felt vulnerable driving late at night, and therefore carried the bat by his side for personal protection.

On Count Three, the jury accepted the People's view of the evidence and returned a guilty verdict. It failed to reach a verdict on Counts One and Two, presumably because, unlike the small wooden bat, which Baugh admitted placing next to him but tried to explain away, it saw reasonable doubt as to whether he knew the scattered ammunition and the rifle in the trunk were in a borrowed car.

At sentencing on the section 22210 conviction, the trial court struck the charged strike prior pursuant to section 1385, and placed Baugh on formal probation for three years. This timely appeal followed.

## II.   DISCUSSION

A trial court has a sua sponte duty to instruct the jury on the elements of a charged offense. (*People v. Mil* (2012) 53 Cal.4th 400, 409.) On appeal, "[t]he independent or de novo standard of review is applicable in assessing whether instructions correctly state the law [citation] and also whether instructions effectively direct a finding adverse to a defendant by removing an issue from the jury's consideration [citation]." (*People v. Posey* (2004) 32 Cal.4th 193, 218.) In construing the relevant statute, "[w]e must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and

3

avoid an interpretation that would lead to absurd consequences." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246.)

In this case, the court instructed under CALCRIM No. 2500, "<*Alternative 3A— object capable of innocent uses >*," the prosecution had to prove that defendant possessed the billy, he knew he possessed the billy, and "[t]he defendant possessed the object as a weapon. When deciding whether the defendant possessed the object as a weapon, consider all the surrounding circumstances relating to that question, including when and where the object was possessed[,] . . . where the defendant was going, . . . whether the object was changed from its standard form, and any other evidence that indicates whether the . . . object would be used [for] a dangerous, rather than a harmless purpose." (CALCRIM No. 2500.) The court further instructed with the portion of CALCRIM No. 2500 that applies "< . . . *only if alternative 3B is given*>" ("<*Alternative 3B—object designed solely for use as weapon >*"), by stating: "The People do not have to prove that the defendant intended to use the object as a weapon." (CALCRIM No. 2500.)

Although the court deviated from the italicized Use Notes embedded within CALCRIM No. 2500 by including instructional language that the People were not obligated to prove intent to use the alleged billy as a weapon, we see no error. Section 22210 criminalizes possession of all dangerous weapons, not just their use or the intent to use them. Thus, the cases decided under section 22210 (e.g., *People v. Huynh* (Jan. 19, 2018, H042184) ___ Cal.App.5th ___ [2018 Cal.App. Lexis 41, at pp. *38–*45] [mini sledgehammer] (*Huynh*); *People v. Davis* (2013) 214 Cal.App.4th 1322, 1328–1329 [modified baseball bat] (*Davis*)), and its predecessor statute, former section 12020, subdivision (a) (e.g., *People v. Grubb* (1965) 63 Cal.2d 614, 620–621, fn. 9 [broken baseball bat] (*Grubb*); *People v. Fannin* (2001) 91 Cal.App.4th 1399, 1404 [bicycle lock on a chain] (*Fannin*)), consistently hold that, if the object in question has a lawful use, the prosecution need only prove the defendant possessed the object as a weapon.[2]

---

[2] Operative January 1, 2012, former section 12020 was repealed (Stats. 2010, ch. 711, § 4) and the pertinent portions were reenacted without substantive change in section 22210. (See *People v. Brown* (2014) 227 Cal.App.4th 451, 454, fn. 1.)

*Grubb* established the applicable test for determining whether a defendant has the requisite intent for felony weapons possession where, as here, the object at issue has a lawful use. (*Grubb*, *supra*, 63 Cal.2d at pp. 619–622 & fn. 9.) Rejecting a claim that former section 12020 was void for vagueness, our Supreme Court in *Grubb* found that, on the facts presented there, possession of a broken baseball bat constituted illegal possession of a billy, without regard to the possessor's intent to use it as a weapon. (*Id.* at pp. 619–622.) The defendant admitted to the police he possessed the bat for "self-defense" and had previously used it as a weapon, which "set forth the very elements that convert the broken bat otherwise usable for peaceful purposes into the kind of instrument proscribed by the statute." (*Id.* at pp. 617–618.)

The *Grubb* court ultimately reversed the defendant's conviction based on a postarrest confession elicited in violation of his right to counsel and privilege against self-incrimination (*Grubb*, *supra*, 63 Cal.2d at pp. 617–618, 622), but in the course of discussing the issue of facial constitutionality, the court expounded at some length on the scope of the challenged statute. "The Legislature obviously sought to condemn weapons common to the criminal's arsenal," the court explained, but "it meant as well 'to outlaw instruments which are ordinarily used for criminal and unlawful purposes.' [Citations.] The Legislature's understandable concern with the promiscuous possession of objects dangerous to the lives of members of the public finds manifestation in [former] section 12020. Easy access to instruments of violence may very well increase the risk of violence. Hence we must, if possible, sustain the constitutionality of a statute designed for the salutary purpose of checking the possession of objects subject to dangerous use." (*Id.* at p. 620.)

Sustaining the constitutionality of former section 12020, the court pointed out that while a defendant may seek to "justify his possession of an instrument found under suspicious circumstances by proof of his intent to use it in accordance with its ordinary legitimate design" (*Grubb*, *supra*, 63 Cal.2d at p. 621, fn. 9), "[t]he prosecution need not show the intent of the possessor to use an instrument in a violent manner." (*Ibid.*) "The concomitant circumstances may well proclaim the danger of even the innocent-appearing

5

utensil.  The Legislature thus decrees as criminal the possession of ordinarily harmless objects *when the circumstances of possession demonstrate an immediate atmosphere of danger.*"  (*Id.* at p. 621, italics added.)  Included among these circumstances, the court explained, are "the time, place, destination of the possessor, the alteration of the object from standard form, and other relevant facts indicat[ing] that the possessor would use the object for a dangerous, not harmless, purpose."  (*Id.* at pp. 620–621.)[3]

In *Fannin*, which illustrates the *Grubb* "circumstances of possession" test in application, the object at issue was a metal chain with a padlock attached to one end.  (*Fannin*, *supra*, 91 Cal.App.4th at pp. 1400–1401.)  The defendant tried to explain that the chain and padlock were necessary for securing his bicycle, but his bicycle and padlock key were at home when he was arrested.  (*Id.* at p. 1401.)  And he admitted to a police officer he was carrying the device for self-defense because "someone had tried to 'punk' him the day before."  (*Ibid.*)  Affirming a conviction for possession of a slungshot, the court concluded this admission "identified the bicycle lock as a weapon, and brought it within the class of objects prohibited" by the statute.  (*Id.* at p. 1405.)

The *Fannin* court held that "[i]ntent to use a weapon is not an element of the crime of weapon possession.  'Proof of possession alone is sufficient.' [Citation.]  However, if the object is not a weapon per se, but an instrument with ordinary innocent uses, the prosecution must prove that the object was possessed *as a weapon*.  The only way to meet that burden is by evidence 'indicat[ing] that the possessor *would use* the object for a dangerous, not harmless, purpose.' [Citation.]  The evidence may be circumstantial, and may be rebutted by the defendant with evidence of 'innocent usage.' " (*Fannin*, *supra*, 91 Cal.App.4th at p. 1404.)  "Intended use is not an element of weapon possession, but the prosecution always bears the burden of proving that the defendant possessed a

---

[3] By way of example, the court explained that, under this test, "the statute would encompass the possession of a table leg, in one sense an obviously useful item, when it is detached from the table and carried at night in a 'tough' neighborhood to the scene of a riot.  On the other hand the section would not penalize the Little Leaguer at bat in a baseball game."  (*Grubb*, *supra*, 63 Cal.2d at p. 621.)

6

weapon" (*ibid.*), a burden it may carry "with circumstantial evidence . . . or with the defendant's statements explaining why he carried the object." (*Id*. at p. 1406.)

In the face of this well-established case law, Baugh argues "if the object in evidence is capable of innocent usage, then the question of the possessor/defendant's intent to use [it] as a weapon comes into play." He relies on *In re Kevin F.*, where, discussing *People v. Raleigh* (1932) 128 Cal.App. 105 (*Raleigh*), we pointed out that "what is and what is not a de facto weapon turns in part on intent to use the item for a dangerous or deadly purpose." (*In re Kevin F.* (2015) 239 Cal.App.4th 351, 361 (*Kevin F.*), disapproved on other grounds in *People v. Hall* (2017) 2 Cal.5th 494 (*Hall*).) The holding in *Kevin F.*, to the extent it remains good law after *Hall*, has no bearing on the issue before us because it concerns the definition of a "dangerous or deadly weapon" in the context of a probation condition prohibiting its possession (*Kevin F.*, *supra*, 239 Cal.App.4th at pp. 360–361).

In *Raleigh*, a lodestar Court of Appeal case discussed in *Kevin F.*—and, more importantly, by our Supreme Court in *Grubb*, which described *Raleigh* as having enunciated a definition of the term "billy" similar to its own definition (see *Grubb*, *supra*, 63 Cal.2d at p. 621, fn. 8)—the appellate panel wrote, "When it appears . . . that an instrumentality other than one falling within the first class is capable of being used in a 'dangerous or deadly' manner, and *it may be fairly inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require*, we believe that its character as a 'dangerous or deadly weapon' may be thus established, at least for the purposes of that occasion." (*Raleigh*, *supra*, 128 Cal.App. at pp. 108–109, italics added.) Prefiguring *Grubb*, *Raleigh* made clear that possessing an object with the intent to use it as a dangerous or deadly weapon *should the circumstances require* amounts to illegally possessing it as such. (*Ibid.*)

Thus, contrary to Baugh's reading of *Raleigh*, that case is consistent with the rule more fully articulated in *Grubb* that, depending on the circumstances, an ordinary object may constitute a weapon if the defendant possesses it as a weapon. As we explained in *Kevin F.*, "conviction for possession of a concealed dirk or dagger does not require

7

specific intent to stab anyone with such an instrument." (See *Kevin F.*, *supra*, 239 Cal.App.4th at p. 365, citing *People v. Rubalcava* (2000) 23 Cal.4th 322, 328, 332 (*Rubalcava*) [affirming a conviction for carrying a concealed dirk or dagger even though the defendant auto mechanic claimed the knife was one of his tools].) And as the Sixth District recently held, "imminent use of the object in a harmful manner does not have to be established to show unlawful possession." (*Huynh*, *supra*, ___ Cal.App.5th ___ [2018 Cal.App. Lexis 41, at p. *44].)

A common variation on the word "weapon," employing it as a transitive verb, is the term "to weaponize" something, meaning to adapt it for use as a weapon. (Merriam-Webster Dictionary Online (2018) <https://www.merriam-webster.com/dictionary/weaponize> [as of February 8, 2018].) In light of the fact Baugh kept a wooden bat by his side, at the ready, under circumstances in which an inference could be drawn that he felt the need for a weapon and had a willingness to use it, we think a rational jury could have found the bat was in his possession *because* he viewed it as weaponized—in short, it was a useful cudgel—not because he had some innocent use in mind.[4] The People bore no burden to show he had an immediate plan to use it as a weapon, only that the circumstances showed he would do so if the need arose. (See

---

[4] Relevant to the overall context here was Baugh's testimony about the prior incident in which he was "jumped," since it suggested not only that he had an expectation of possible combat while driving in his neighborhood, but that he is a pugnacious character with a history of assaultive conduct using weaponized objects. Baugh testified that a week or two before the traffic stop that led to his arrest, he was "socked in the face" in the Cavalier at an intersection near his mother's home, and "know[ing] how to defend [himself]," got out of the car because he was not "going to put up with that." After getting out, he said, he got into a fight with 20 older men, who had moved into the neighborhood recently, were trying to "bully the neighborhood," and appeared to be "up to no good." He was left with a "black eye" and "about 47 lumps on my head from being kicked and stomped." The jury also heard testimony from Officer Colburn that Baugh was "defiant" and "argumentative" during the traffic stop and that he had a prior felony conviction for assaulting an officer with a deadly weapon by "striking a police officer's car with [his] car deliberately." (See *People v. Claborn* (1964) 224 Cal.App.2d 38, 41–42 [defendant who intentionally rammed his car head-on into an occupied police car was guilty of assault with a deadly weapon].)

8

*Grubb*, *supra*, 63 Cal.2d at p. 622 [bat found to be billy may have been "[c]onceived for peaceful purposes, [but] it was wrapped in the indicia and circumstance of probable assault"].) [5]

Nor were the People obliged to show that Baugh's bat had been physically altered from its original form to enhance its utility as a weapon, as was the case with the bats involved in both *Grubb*, *supra*, 63 Cal.2d at page 616 ("[t]he last few inches of the handle had been broken from the bat; the instrument was 20 inches long, taped at the smaller or handle end, and heavier at the unaltered end") and *Davis*, *supra*, 214 Cal.App.4th at page 1325 ("[a] number of holes had been drilled partially through the handle, and it had a leather wrist strap"). "[A]lteration of the object from standard form" is but one of a list of considerations the *Grubb* court mentioned may be relevant to the "circumstances of possession" test. (*Grubb*, *supra*, 63 Cal.2d at p. 620.) In this case, expert testimony was presented at trial that a billy is an "extremely short . . . 12–18-inch solid wood club" that is "easily concealable" and that may be used as an "impact weapon." The bat found tucked next to the driver's seat here may have had other, peaceful uses, but there is no dispute it met this physical description. When considered in the context of circumstances suggesting Baugh had the bat close at hand, ready to meet his felt need for a weapon, we have no trouble concluding there was enough evidence to convict him on Count Three under the instructions as given.

Relying on guidance in the Use Notes, Baugh insists these particular instructions were defective because CALCRIM No. 2500 in terms requires the prosecution to prove he intended to use his bat as a weapon. He bases this contention on the language, "The People do not have to prove that the defendant intended to use the object as a weapon," which he correctly points out is subject to the explicit caveat that it should be given "only

---

[5] Cf. *People v. Stiltner* (1982) 132 Cal.App.3d 216, 230 ("A person is 'armed' with a deadly weapon when he simply carries a weapon or has it available for use in either offense or defense. [Citation.] The evidence shows the knife was carried by defendant in his back pocket, thus available for immediate use for offense or defense. The statute at issue [section 12022.3] does not require a defendant actually use the weapon for offense or defense, just that he carry it in a manner available for such use.").

if alternative 3B"—the scenario involving an object designed for exclusive use as a weapon—"is given." (CALCRIM No. 2500.) By negative inference, Baugh suggests, instructional language designed only for Alternative 3B cases is inappropriate where, as here, the object in question has a lawful use. Without offering any explanation for why the CALCRIM No. 2500 Use Notes draw this apparent distinction, the Attorney General's response to Baugh's reading of CALCRIM No. 2500 is blunt: He contends "[t]he implication [in CALCRIM No. 2500] that the instruction should not be given absent such a finding [that Alternative 3B applies] does not make it the law."

We agree with the Attorney General here. To the extent CALCRIM No. 2500 suggests something different from the rule laid down in an unbroken line of precedent over many decades in weapons possession cases involving objects capable of innocent use, as that rule was announced in *Grubb* and as it has been applied in *Fannin*, *Davis* and *Huynh*, among other cases, it suffices to note that the CALCRIM pattern jury instructions are "not themselves legal authority." (*People v. Johnson* (2016) 243 Cal.App.4th 1247, 1269; see *People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7 ["[J]ury instructions, whether published or not, are not themselves the law, and are not authority to establish legal propositions or precedent. They should not be cited as authority for legal principles in appellate opinions. At most, when they are accurate, . . . they restate the law."].)

In any event, the Authority section following CALCRIM No. 2500 states the correct rule: "Need Not Prove Intent to Use," citing *Rubalcava*, *supra,* 23 Cal.4th at page 328 and *Grubb*, *supra*, 63 Cal.2d at pages 620–621, footnote 9. That supplementary section to CALCRIM 2500 also provides: "Innocent Object—Must Prove Possessed as Weapon," citing *Grubb*, *supra*, 63 Cal.2d at pages 620–621 and *Fannin*, *supra*, 91 Cal.App.4th at page 1404. (Authority to CALCRIM No. 2500.) The Commentary to CALCRIM No. 2500 explains further: " 'Intent to use a weapon is not an element of the crime of weapon possession.' (*People v. Fannin*[, *supra*,] 91 Cal.App.4th [at p.] 1404 . . . .) However, interpreting now-repealed Penal Code section 12020(a)(4), possession of a concealed dirk or dagger, [our] Supreme Court stated that '[a] defendant who does not know that he is carrying the weapon or that the concealed instrument may be used as a

10

stabbing weapon is . . . not guilty of violating [former] section 12020.' ([*Rubalcava*, *supra*,] 23 Cal.4th [at pp.] 331–332 . . . .) Applying this holding to possession of other weapons prohibited under now-repealed Penal Code section 12020(a), the courts have concluded that the defendant must know that the object is a weapon or may be used as a weapon, or must possess the object 'as a weapon.' (*People v. Gaitan* (2001) 92 Cal.App.4th 540, 547 . . . ; *People v. Taylor* (2001) 93 Cal.App.4th 933, 941 . . . ; *People v. Fannin*, *supra*, 91 Cal.App.4th at p. 1404.)" (Com. to CALCRIM No. 2500.)

Finally, Baugh argues, "Telling the jury that it need not consider the defendant's intent regarding possession of an object which has other and lawful uses than as a weapon identified by statute invites the jury to ignore rather than compare and consider a critical part of the defense case." In effect, he argues, "Baugh was not allowed to have his jury consider his intention in possessing the tire thumper cum billy . . . ." This last line of argument, too, is meritless. It is inaccurate to say the trial court told the jury Baugh's intent regarding his possession of the small wooden bat may go ignored. In fact, the jury was told to "consider all the surrounding circumstances" to determine "whether the defendant possessed the object as a weapon." The added instruction that the People were not required to prove intent to use the object as a weapon was consistent with this guidance, and was an accurate statement of law.

In *Rubalcava, supra,* 23 Cal.4th at page 329, our Supreme Court declined an invitation to declare weapons possession in violation of former section 12020, subdivision (a), a specific intent crime. There, the defendant argued that not requiring specific intent would unfairly "make a felon out of . . . 'the auto mechanic who absentmindedly slips a utility knife in his back pocket before going out to lunch[,] . . . [or] the parent who wraps a sharp pointed knife in a paper towel and places it in his coat to carry into a PTA potluck dinner[.]' " (*Rubalcava, supra,* at p. 331.) While acknowledging "the potentially broad reach of [the statute] in the absence of a specific intent element is troubling," the court nevertheless deferred to the Legislature. (*Ibid.*)

We view the issue presented here in the same way. The Legislature enacted section 22210 to criminalize the possession of dangerous weapons. The *Grubb* court's

11

articulation of the legislative intent behind that offense more than 50 years ago remains valid today, as does the "circumstances of possession" test announced there.  Where an object charged to be a dangerous weapon has a lawful use, the prosecution must prove the defendant possessed it as a weapon.  Because imposing an additional requirement of proof of intent to use the object as a weapon "would threaten to narrow the enforceable scope of [the statute] unwisely" (*Rubalcava*, *supra*, 23 Cal.4th at pp. 337–338 (conc. opn. of Werdegar, J.)), any argument that violation of section 22210 should be viewed as a specific intent crime is best directed to the Legislature.  We decline to adopt it by judicial construction.

## III.    DISPOSITION

Affirmed.

_____
Streeter, J.

We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.

A145675/*People v. Baugh*

Trial Court:   Contra Costa County Superior Court

Trial Judge:   Hon. Diana Becton

Counsel:

John Doyle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Seth K. Schalit, Supervising Deputy Attorney General, Laurence K. Sullivan, Supervising Deputy Attorney General for Plaintiff and Respondent.