Filed 2/24/22  P. v. Johnson CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ARMAH VICTOR JOHNSON,<br><br>    Defendant and Appellant. | B317188<br><br>(Kern County<br>Super. Ct. No. DF012387A) |


APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.  Affirmed as modified.

Carla J. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Armah Victor Johnson (defendant) attacks his conviction and 10-year prison sentence for possessing a sharp instrument in a penal institution (Pen. Code, § 4502, subd. (a))[1] on several grounds. We affirm his conviction, but order his sentence reduced to eight years.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

On August 6, 2015, defendant was an inmate at the Kern Valley State Prison. While defendant was being searched prior to entering the prison's exercise yard, a guard found in defendant's possession a pen-shaped sliver of melted plastic with one end "sharpened to a point." The item was found inside a cloth sack secreted inside the innermost of two pairs of boxer shorts he was wearing, near defendant's groin; the sack was attached to a string that poked out of the waistband of the shorts.

Both the prison guard who discovered the item as well as the guard's supervisor opined that the item was a "sharp instrument." The item's sharpened point was able to puncture a latex glove, which is thinner than human skin, after two stabs.

Both the guard and his supervisor opined that an inmate would have no legitimate reason to possess such an item on the exercise yard.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

## II.    Procedural Background

The People charged defendant with possessing a "sharp instrument" while confined in a penal institution (§ 4502, subd. (a)).  The People alleged that defendant's 2001 conviction for second degree murder—which was why he was in the Kern Valley State Prison in the first place—constituted a "strike" within the meaning of our three strikes law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(j)).  The People further alleged that defendant had served two prior prison terms (§ 667.5, subd. (b)) for two prior drug-related offenses.

The matter proceeded to a jury trial.  The People called two witnesses—namely, the prison guard who found the item in defendant's boxer shorts and the guard's supervisor.  The defense called no witnesses.  The jury convicted defendant of the charged offense, and in a bifurcated second phase, found all prior offense allegations to be true.

The trial court sentenced defendant to 10 years in prison, comprised of a base sentence of eight years (the upper term of four years, doubled due to the prior strike) plus one additional year for each of the two prior prison sentences.

Defendant filed a timely notice of appeal.[2]

### DISCUSSION

In this appeal, defendant argues that (1) section 4502, subdivision (a) is unconstitutionally vague, (2) the trial court erred in refusing to give two pinpoint jury instructions, (3) the prosecutor engaged in misconduct during closing argument, (4) the trial court may not have complied with the required

---

[2]    Pursuant to an order of the Chief Justice on December 20, 2021, this matter was transferred from the Fifth District Court of Appeal to the Second District Court of Appeal.

procedures during an in camera hearing pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, and (5) the two prior prison term enhancements are no longer valid due to the enactment of Senate Bill No. 136 (2019-2020 Reg. Sess.).  The People concede that the last argument has merit, and we agree.  As discussed next, defendant's remaining arguments are meritless.

## I.     Vagueness Challenge

Defendant urges that section 4502, subdivision (a) is unconstitutionally vague—facially and as applied to him— because it does not define the term "sharp instrument."  This constitutional challenge is one we review de novo.  (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 934.)

Under the due process provisions of both the federal and California constitutions, "a criminal statute must '"be definite enough to provide (1) a standard of conduct for those whose activities are proscribed, and (2) a standard for police enforcement and for ascertainment of guilt."'  [Citations.]" (*People v. Morgan* (2007) 42 Cal.4th 593, 605 (*Morgan*); *People v. Superior Court (Caswell)* (1988) 46 Cal.3d 381, 404; *United States v. Davis* (2019) 139 S. Ct. 2319, 2325 (*Davis*).)  For these purposes, "[o]nly a reasonable degree of certainty [and definiteness] is required" (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1107), and we may look to "'the common experience[] of mankind'" in assessing whether the statute is too uncertain or vague (*Morgan*, at p. 606, quoting *People v. Daniels* (1969) 71 Cal.2d 1119, 1128-1129).  We indulge a "'strong presumption'" that statutes are valid "'unless their unconstitutionality clearly, positively, and unmistakably appears.'  [Citations.]" (*Morgan*, at p. 605.)

4

This strong presumption has not been rebutted here.  That is because, "[w]hen determining whether a statute is 'sufficiently specific to meet constitutional standards. . . [,] we look first to the language of the statute, then to its legislative history, and finally to decisions construing the statutory language.'" (*People v. Rubalcava* (2000) 23 Cal.4th 322, 332.)  These sources confirm that a reasonable person would understand when an item constitutes a "sharp instrument" that an inmate may not possess under section 4502.  Section 4502 itself requires that the item be a "*sharp* instrument" (§ 4502, subd. (a), italics added), and distinguishing between items that are "sharp" and those that are not is something "[a] person of ordinary intelligence" can do.  (*Caswell*, *supra*, 46 Cal.3d at p. 404.)  A beach ball *is not* "sharp," but an object with a "pointy end" *is*.  Our Legislature's stated purpose for enacting this statute—namely, to "protect inmates and correctional staff 'from the peril of assaults with dangerous weapons perpetrated by armed prisoners'" (*People v. Custodio* (1999) 73 Cal.App.4th 807, 812 (*Custodio*))—reinforces this commonly understood meaning of the word "sharp."  And precedent confirms this plain meaning by defining a "sharp instrument" as one "with pointed edges" (*People v. Scully* (2021) 11 Cal.5th 542, 602) or "capable of being used to inflict injury as a stabbing device." (*Custodio*, at p. 812.)  Not surprisingly, a solid wall of California precedent has rejected the argument that section 4502, subdivision (a) is unconstitutionally vague on its face.  (*Custodio*, at pp. 810-811; *People v. Steely* (1968) 266 Cal.App.2d 591, 596-597; *People v. Morales* (1967) 252 Cal.App.2d 537, 539-541; *People v. Crenshaw* (1946) 74 Cal.App.2d 26, 27-28.)  The term is also not unconstitutionally vague as applied in this case because (1) the trial court specifically instructed the

jury that "[a] sharp instrument is an object that must be sharp," and may include "[a] pointed object," and (2) the item defendant possessed in this case unquestionably fits this definition. (Cf. *People v. Hayes* (2009) 171 Cal.App.4th 549, 557-560 [jury instruction that defined "sharp instrument" to eliminate the requirement that it be "sharp" is invalid].)

Defendant resists this conclusion with four arguments.

First, he argues that the United States Supreme Court's decision in *Johnson v. United States* (2015) 576 U.S. 591 (*Johnson*) supersedes—and hence invalidates—the precedent against him. He is wrong. *Johnson* held that the so-called "residual clause" of the statute defining a "violent felony" for purposes of the federal Armed Career Criminal Act of 1984 was unconstitutionally vague. (*Id.* at pp. 596-604.) But *Johnson*'s holding was a narrow one. The residual clause pronounced that a "violent felony" included "any felony that 'involves conduct that presents a serious potential risk of physical injury to another,' [citation]." (*Id.* at p. 593.) What made this language unconstitutionally vague, *Johnson* reasoned, was that this assessment was to be made *categorically*—that is, by looking to "the kind of conduct that [the felony at issue] involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." (*Id.* at 596.) Because the categorical approach "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, [and] not to real-world facts or statutory elements," *Johnson* held, it left "grave uncertainty about how to estimate the risk posed by a crime." (*Id.* at p. 597.) *Johnson* was careful to telegraph that "the application of a qualitative standard . . . to real-world conduct" was *not* impermissibly vague (*id.* at pp. 603-604), and subsequent

6

cases have reaffirmed that there are no "vagueness problem[s] with asking a jury to decide whether a defendant's 'real-world conduct' created a substantial risk of physical violence" (*Davis, supra*, 139 S. Ct. 2319, 2327; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1143-1144). Section 4502 is on the constitutional side of the line *Johnson* drew because it simply requires the trier of fact to assess whether the object at issue qualifies as a "sharp instrument" in the "real world."

Second, defendant contends that section 4502 lists several different types of items inmates may not possess (§ 4502, subd. (a))[3]; that other statutes define some of those terms, such as "dirks and daggers" (§ 16470); that no statute defines a "sharp instrument" or the "risk of harm" that must be associated with carrying a sharp instrument; and that section 4502 is accordingly vague with respect to sharp instruments. Again, he is wrong. The term "sharp instrument" is meant to sweep more broadly than "dirk or dagger" in order to encompass the broader array of homemade weapons inmates are likely to create. (*People v. La Grande* (1979) 98 Cal.App.3d 871, 873 (*La Grande*).) That our Legislature added a descriptive "catch-all" category (that is, "sharp instrument[s]") to reach these impossible-to-name items does not automatically render that category vague. (See *People v. Rodriguez* (1975) 50 Cal.App.3d 389, 398-399 [Legislature's use of

---

[3] Specifically, section 4502, subdivision (a), in pertinent part, makes it a crime for "[any] person . . . at or confined in any penal institution" to "possess[] or carr[y] upon his . . . person . . . any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, or metal knuckles, any explosive substance, or fixed ammunition, any dirk or dagger or sharp instrument, any pistol, revolver, or other firearm, or any tear gas or tear gas weapon." (§ 4502, subd. (a).)

catch-all category of "deadly weapon" to "keep pace with man's developing capacity to inflict serious harm, a problem compounded by inmate ingenuity engendered by forced idleness" does not render that category vague].) Nor is the description "sharp instrument" itself vague, for the reasons noted above. And defendant's complaint that the statute does not define the "risk of harm" is wholly irrelevant because "risk of harm" is not an element of the offense.

Third, defendant asserts that section 4502 has no specific intent requirement. This is true (*People v. Wells* (1945) 68 Cal.App.2d 476, 481-482; *People v. Evans* (1969) 2 Cal.App.3d 877, 881), but irrelevant. Although it is true that requiring proof of specific intent can "save" what might otherwise be a vague statute, the absence of such a requirement does not render an otherwise constitutional statute vague.

Lastly, defendant posits that the term "sharp instrument" is vague as applied here because the prison guard who took the object from defendant accidentally dropped it on the ground afterwards, breaking it into two pieces. We reject this argument. The item was sharpened to a point; it is a sharp instrument. The fact that it was dropped at some point thereafter does not change this fact. Defendant speculates that the object may have been broken to begin with, but he offers no *evidence* in support of his speculation.

## II.    Instructional Issues

Defendant next argues that the trial court erred in refusing to instruct the jury with two pinpoint instructions. In appropriate circumstances, a trial court is required to give a requested jury instruction that "'pinpoints the defense theory of the case'" unless that instruction "incorrectly states the law, is

argumentative, duplicative [of other instructions], or potentially confusing [citation], or if it is not supported by substantial evidence [citation]." (*People v. Moon* (2005) 37 Cal.4th 1, 30; *People v. Burney* (2009) 47 Cal.4th 203, 246.) In assessing whether substantial evidence supports a requested instruction, we view the evidence in the light most favorable to the defendant. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.) We independently review instructional rulings. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

### A.	*Defining "dirk or dagger"*

The trial court refused defendant's request to instruct the jury with the statutory definitions of "dirk or dagger." This refusal was correct. As noted above, the term "sharp instrument" includes a larger universe of objects than the term "dirk or dagger." (*La Grande*, *supra*, 98 Cal.App.3d at p. 873.) As a result, instructing the jury on the definition of "dirk or dagger" would have been confusing because an object falling outside that definition could still be a "sharp instrument."

Defendant responds with two further arguments. First, he urges that the trial court did not define the term "sharp instrument." This misreads the record because, as noted above, the trial court *did* define that term for the jury as "an object that must be sharp," including "[a] pointed object." Second, defendant suggests that the trial court erred in allowing the prison guard and his supervisor to opine that the item seized from him was a "sharp object" because it was "not the officer[s'] decision to make." Apart from being forfeited (because defendant did not object to the impropriety of any expert opinion below), this suggestion is also without merit because expert witnesses may opine on the ultimate issue in a case. (Evid. Code, § 805.)

9

## B.    *"Harmless use" instruction*

The trial court also refused defendant's request to instruct the jury that it could consider whether the object he possessed could be used in a harmless way in determining whether it was a "sharp instrument." This refusal was also correct. Such an instruction is warranted only if substantial evidence supports it. (Bench Notes to CALCRIM No. 2745.) The trial court found that "there was no evidence . . . that defendant possessed [the] item for a harmless purpose," and we agree. Here, the circumstantial evidence that defendant possessed the 5.25-inch pen-sized object with a sharpened point for harmful purposes is overwhelming and unrebutted by any contrary evidence. (E,g., *People v. Fannin* (2001) 91 Cal.App.4th 1399, 1403-1404 [possession of object under "suspicious circumstances" may indicate harmful purposes]; *People v. Grubb* (1965) 63 Cal.2d 614, 620-621 [possession of table leg in trunk may indicate harmful purpose].) Defendant responds that some objects that may be prohibited under section 4502 have harmless uses (such as pens or pencils), and posits that it is possible that the 5.25-inch sharpened object defendant possessed could be a harmless "tool." To be sure, section 4502 is contextual—that is, it prohibits the possession of some objects some of the time but not *all* of the time. But there was no evidence defendant was possessing the object at issue in this case for any harmless purpose. Defendant's argument on appeal that the object could possibly have been used as a "tool" in some other hypothetical context is wholly speculative, and speculation does not create the substantial evidence necessary to justify the pinpoint instruction he requested. (See *People v. Ramon* (2009) 175 Cal.App.4th 843, 851 ["speculation is not substantial evidence"].)

10

## III. Prosecutorial Misconduct

Defendant argues that the prosecutor committed two instances of misconduct during closing argument. "A prosecutor's conduct during a criminal trial violates the federal Constitution if it is "'so egregious that it infects the trial with such unfairness to make the conviction a denial of due process'" and violates the California Constitution if it "'involves ""the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."''" [Citations].'" (*People v. Collins* (2021) 65 Cal.App.5th 333, 340.) In assessing whether a prosecutor has committed misconduct during closing argument, "we must view the statements in the context of the [prosecutor's] argument as a whole." (*People v. Dennis* (1998) 17 Cal.4th 468, 522.) We generally review claims of prosecutorial error for an abuse of discretion (*People v. Peoples* (2016) 62 Cal.4th 718, 792-793), but independently examine what the law is (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 370), and "objective[ly]" examine how a "reasonable juror" would likely interpret the prosecutor's remarks (*People v. Tully* (2012) 54 Cal.4th 952, 1043), bearing in mind that ""'we do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. [Citation.]'" (*People v. Centeno* (2014) 60 Cal.4th 659, 667.)

### A. *Alleged comment on defendant's failure to testify*

#### 1. *Pertinent facts*

During his initial closing argument, the prosecutor urged the jury, "And so ask yourself what evidence did you hear contrary to the testimony of [the prison guard] and [his supervisor]?" Defendant objected, "Shifting the burden. Also

11

Fifth Amendment." After the trial court overruled the objection, the prosecutor continued: "The burden is entirely upon the People to prove every element of this case. The defense has the ability to cross-examine witnesses. That's one of the cornerstones of the criminal justice system. . . [The defense attorney] had some tough questions for [the People's witnesses.] Going down to [it], [an] attorney['s] questions are not evidence, and I think that's very important in this, because we heard a lot of questions about safety concerns and about some sort of other purpose in possessing a sharp instrument."

    2.    *Analysis*

A prosecutor commits misconduct if he comments— explicitly or implicitly—on a defendant's failure to testify. (*People v. Mincey* (1992) 2 Cal.4th 408, 446; *People v. Hughes* (2002) 27 Cal.4th 287, 371-372 (*Hughes*).) However, a prosecutor does *not* commit misconduct if he comments "'on the state of the evidence or on the failure of the defense to introduce material evidence or call logical witnesses.'" (*Hughes*, at p. 372, quoting *People v. Hovey* (1988) 44 Cal.3d 543, 572.)

The prosecutor did not commit misconduct by asking the jury, "[W]hat evidence did you hear contrary to the testimony of [the prison guard] and [his supervisor]?" Although this question could, in the abstract, be viewed as obtusely commenting on *the defendant's* failure to provide that "contrary" "evidence" himself, it is more reasonably viewed as a comment on the absence of evidence in the record—including evidence that could have been elicited during cross-examination of the People's witnesses or by calling other witnesses. Defendant urges that only *he* and the prison guard were percipient witnesses to the incident itself, but this ignores that the prosecutor was speaking to the harmfulness

12

of the object—a topic that could be the subject of expert testimony by persons who were *not* witnesses to the incident itself. Moreover, the prosecutor's further argument clarified that what he referred to was the absence of evidence elicited on cross-examination—not anything only the defendant himself could have provided.

**B.    *Alleged comment on defendant's exercise of his right to a jury trial***

### 1.    *Pertinent facts*

During his rebuttal closing argument, the prosecutor argued, "This is an item that was specifically designed to have a sharp end.  You don't have two [sharp] ends. . .  You have a bulbous end that could be used as a handle and a sharp end that could be used as a stabbing weapon.  *You might ask yourself why we are here?  The reason we're here is because the defendant demanded a right that we all have.*"  (Italics added.)  After defendant made a general objection to the italicized language and the court overruled that objection, the prosecutor continued: "The defendant demanded a right to a jury trial and that's a right we all have.  The defendant is cloaked in innocence.  And when the People alleged that a crime happened, the defendant stands trial.  Witnesses are called.  Witnesses are cross-examined.  This is the reason we're here. The defendant was given a fair trial.  You have the evidence before you.  The evidence supports and demands a verdict of guilty."

### 2.    *Analysis*

A prosecutor commits misconduct if he urges the jury to punish a defendant for exercising his constitutional rights, including his right to a trial by jury.  (E.g., *People v. Schindler*

(1980) 114 Cal.App.3d 178, 189; *Burns v. Gammon* (8th Cir. 2001) 260 F.3d 892, 895.)

The prosecutor did not commit misconduct. Although he mentioned that defendant was exercising his right to trial by jury, he never asked the jury—explicitly or implicitly—to punish defendant for doing so. Instead, the prosecutor went on to explain what the jury's role was to be in evaluating the evidence.[4]

## IV.   *Pitchess* **Review**

Defendant asks us to examine whether the trial court properly conducted its in camera *Pitchess* hearing. Where, as here, the trial court finds good cause to examine a custodial officer's personnel file for potentially discoverable information, the court must conduct an in camera hearing at which it examines the file and must "make a record of what documents it examined before ruling on the *Pitchess* motion." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229.) The court's ruling will be upheld absent an abuse of discretion. (*Id.* at p. 1228.) Here, the trial court found good cause to examine three officers' records and ordered disclosure of some of those records. We have independently reviewed the sealed reporter's transcript of the in camera hearing, and conclude that the trial court properly exercised its discretion and that no other personnel records of the officers at issue were subject to disclosure.

---

[4]     Defendant's argument that his counsel was constitutionally ineffective for failing to move to strike or ask for an admonition lacks merit because our consideration of this issue on the merits obviates any prejudice from counsel's allegedly incompetence.

## V. Sentencing

Defendant argues that the two one-year prior prison enhancements the trial court imposed are no longer valid because our Legislature amended section 667, subdivision (b) to limit the one-year enhancement for prior prison terms only to terms for "sexually violent offense[s]." (Sen. Bill No. 136 (2019-2020 Reg. Sess.)), that he is entitled to the retroactive application of this ameliorative amendment to his nonfinal conviction (*In re Estrada* (1965) 63 Cal.2d 740, 742), and that his two prior drug convictions are not for "sexually violent offense[s]." As the People concede, defendant is correct. (E.g., *People v. Lopez* (2019) 42 Cal.App.5th 337, 339-342; *People v. Winn* (2020) 44 Cal.App.5th 859, 872-873.) Accordingly, the imposition of the two, one-year enhancements pursuant to section 667.5, subdivision (b) is stricken. (*Lopez*, at p. 342 [striking the prison priors but not remanding for resentencing where the trial court imposed the maximum sentence].)

15

**DISPOSITION**

The trial court is ordered to strike the two, one-year enhancements for prior prison terms.  As modified, the judgment is affirmed.  The trial court is directed to prepare a corrected abstract of judgment and to forward a copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST